22398

In the Matter of M. Daniel ISEMAN.

(336 S. E. (2d) 474)

Supreme Court

*Atty. Gen. T. Travis Medlock* and *Asst. Atty. Gen. Richard B. Kale, Jr.,* Columbia, *for complainant.*

*George Hunter McMaster,* Columbia, *for respondent.*

Heard Oct. 8, 1985.

Decided Oct. 29, 1985.

*Per Curiam:*

This grievance proceeding charges M. Daniel Iseman with failing to preserve the identity of funds and property of a client in violation of DR9-102 of the Rules of Disciplinary Procedure. The Panel recommended that the complaint be dismissed. The Executive Committee disagreed with the Panel's findings of fact and conclusions of law. It recommended that Respondent Iseman receive a public reprimand. We agree with the Executive Committee.

Respondent Iseman's law practice was primarily concentrated in the commercial real estate area. His primary role in his law firm was to attract clients and work out business transactions. The majority of the legal work generated from these transactions was handled by other members of his firm.

By virtue of an order of the South Carolina Supreme Court, the client trust accounts of the respondent were au-

dited. As a result of this audit, the complaint was filed in this case. The respondent was charged with irregularities in connection with three separate accounts. The irregularities involved in two of these accounts, Heritage House, Inc. and Maritime Beach Club, constituted violations of the Rules of Disciplinary Procedure.

Heritage House, Inc. was a corporation formed by Respondent Iseman to purchase an apartment complex in Columbia, South Carolina and convert it into condominiums. The stock of the corporation was owned by five individuals, including Respondent Iseman, who each owned twenty percent of the stock. Iseman's twenty percent of the stock became a law firm asset of which Iseman owned forty percent. The law firm of the respondent handled all legal work for Heritage House, Inc. In the course of that representation, certain Heritage House obligations were paid from the law firm trust account. On several occasions, the Respondent wrote trust account checks for Heritage House before receiving and depositing corresponding amounts from Heritage House. Iseman sometimes wrote trust account checks on behalf of Heritage House and then requested that the bank transfer funds from a Heritage House account into his law firm trust account to cover the trust account check he had already written.

The audit indicated that Iseman wrote a $5,000 check from his firm trust account to the Buskin Agency for a personal investment in a real estate deal. The check represented Iseman's portion of an investment with several other investors, all of which were made through Iseman's trust account. In addition, Iseman's firm represented all of the corporations or partnerships formed to make the investments.

Maritime Beach Club was another business in which Iseman was involved with other investors. Its purpose was to purchase a hotel at Myrtle Beach and convert it to condominiums. The Respondent's law firm represented Maritime and, in the course of that representation, he wrote many firm trust account checks for Maritime obligations. On several occasions, Respondent expended more trust account funds for Maritime then Maritime had in its client account. On one occasion, the Maritime client account was overdrawn for $18,956. This amount was deposited into the trust ac-

count by Iseman to cover the deficit. The deficit in the Maritime client account was the result of poor business practices and inattention of the Respondent.

The writing and negotiation of trust account checks prior to securing and depositing funds from the client is a violation of DR9-102. Respondent Iseman wrote trust account checks for Heritage House obligations before depositing Heritage House funds into the trust account. Fortunately Heritage House maintained sufficient funds to, and did in fact, cover the trust account checks. This practice, however, is a violation of the rule.

Respondent wrote numerous trust account checks in connection with the Maritime Beach Club account. Respondent had the obligation to monitor the trust account and ascertain that each client account was never allowed to show a deficit. Respondent did not live up to that responsibility in connection with the Maritime account. On several occasions, the Maritime client account showed a deficit. During those times, trust funds of other clients were used to cover the deficit.

The foregoing actions render a public reprimand the appropriate sanction. Attorney M. Daniel Iseman therefore stands publicly reprimanded by this Court in accordance with Rule 7A(4) of the Supreme Court Rules on Disciplinary Procedure.

Public reprimand.

GREGORY, J., disqualified.

HARWELL, Justice, dissenting:

I disagree as to the appropriate sanction in this case and would impose a private reprimand. While respondent did violate DR9-102, the violations did not result from an intent to misappropriate funds nor to deceive any client. No checks were returned for insufficient funds, no client lost money, and the respondent did not receive financial benefit from the violation. Under these circumstances, I believe that a private reprimand is the appropriate sanction.